IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY WALTER BROOM,

                  Plaintiff,

  v.

AZTALAN ENGINEERING, INC.,

                  Defendant.

OPINION and ORDER

16-cv-262-jdp

---

      Plaintiff Gary W. Broom, appearing pro se, brings this lawsuit in which he alleges that defendant Aztalan Engineering, Inc. wrongfully terminated him from his job as a machinist, in violation of the Age Discrimination in Employment Act. Aztalan has filed a motion for summary judgment, a motion for sanctions against Broom for his continued failure to provide adequate discovery responses, and a motion to stay case deadlines. One of the sanctions Aztalan seeks is dismissal of the case. There is no need to dismiss the case as a sanction or to stay remaining scheduling deadlines, because I conclude that Aztalan should be granted summary judgment on the merits of Broom's claim. I will direct the clerk of court to enter judgment in Aztalan's favor and close the case.

PRELIMINARY MATTERS

      I previously granted Aztalan's motion to compel discovery after Broom failed to adequately answer one of Aztalan's interrogatories and its request for production of documents. Dkt. 24. I also granted Aztalan's motion for reasonable expenses incurred in bringing its motion to compel, and I directed Aztalan to submit an itemized accounting of its reasonable expenses. *Id*. Aztalan has done so, indicating that counsel seeks $1,427.50 in fees for 6.8 hours of time

split among three lawyers. These are reasonable figures, so I will award Aztalan the amount it seeks.

Aztalan followed with another motion for sanctions, Dkt. 37, stating that Broom never complied with my previous order by responding to the discovery requests that I concluded he failed to adequately answer. Broom opposes the motion by saying that he is not withholding any information, but he does not address Aztalan's statement that he failed to redraft the relevant discovery responses. I will grant Aztalan's motion because Broom failed to follow my previous order. In addition to attorney fees and costs incurred in bringing its motion, Aztalan seeks dismissal of the case. As with Aztalan's previous motion, I will grant it reasonable fees and costs. But I will deny the motion to dismiss the case, given my summary judgment opinion below dismissing the case.

Aztalan has filed a motion to stay the remaining pretrial deadlines, Dkt. 41, but I will deny that motion as moot because I am granting Aztalan's motion for summary judgment.

SUMMARY JUDGMENT

**A. Undisputed facts**

I draw the following from the parties' summary judgment materials.[1]

Plaintiff Gary W. Broom is a resident of Ixonia, Wisconsin. He was born in 1953. Defendant Aztalan Engineering, Inc. is located in Lake Mills, Wisconsin. Aztalan specializes

---

[1] In opposition to Aztalan's motion, Broom filed a document in which he disputes portions of Aztalan's various summary judgment submissions, instead of following the court's procedures by filing numbered responses to each of Aztalan's proposed findings. Out of consideration for Broom's pro se status, I will consider this document even though it does not follow the court's procedures and Broom does not swear under penalty of perjury that his statements are correct.

in manufacturing precision machined parts for various businesses, including those in the medical, aerospace, defense, and energy industries.

Broom began working at Aztalan in September 2009, initially as a temporary worker assigned by a staffing agency. In January 2010, Broom accepted a full-time position working as a machinist on second shift in the production department. He was responsible for setting up and operating production equipment to make precision machined parts, and performing periodic machine inspections.

Aztalan's employee handbook detailed the company's expectations for its employees.[2] Among other things, Aztalan explicitly required its employees to satisfy appropriate "standards of work quality and quantity," "work as a team to improve [Aztalan's] manufacturing process," and "act in a professional and courteous manner towards each other and [Aztalan's] customers." *See* Dkt. 32-1. Any employee who demonstrated "substandard performance or conduct[ed] or commit[ted] an act that [wa]s offensive to the rules of common sense or decency or an act that violate[d] a published policy or rule of Aztalan Engineering [was subject to] corrective action," including termination.

Starting in 2012, Broom received a series of warnings about his job performance. In March 2012, Broom received a performance review stating that he needed "to work on paying closer attention to detail to reduce rework and scrap and make sure he thoroughly inspects his

---

[2] Broom says that he did not "receive" the handbook, Dkt. 35, at 1, and supports this with a statement from the handbook-acknowledgment card showing that individuals were not given copies of the handbook, but rather copies were available in break rooms and the human resources department. Dkt. 35-1. Whether or not Broom physically possessed a copy of the handbook is immaterial. It is undisputed that Broom signed a statement agreeing to familiarize himself with the handbook's rules.

parts,"[3] although the performance and skills charts included in the review document did not indicate any areas denoted as "need[ing] emphasis/growth" or "not acceptable." Dkt. 32-2.

In late May 2012, Mike Nebel, then Aztalan's director of production, gave Broom a verbal warning, explaining that Broom was producing a significant number of nonconforming parts and that he needed to improve the quality of the parts he was producing. Dkt. 32-3.

In May 2013, Broom received a performance review from Nebel stating that that Aztalan "need[ed him] to improve on the quality of his parts. Pay more attention to detail. Don't become the weak link in the chain." Dkt. 32-4. This time the "Quality of work" category on his review document was denoted as "need[ing] emphasis/growth." *Id*. Broom also received a verbal warning the day of the review because he intentionally dawdled in going over to see Nebel, stating that he was doing so in response to Nebel delaying a few months in holding the review.

Broom states in his summary judgment opposition that he did not receive a verbal warning. But I cannot credit this statement because he previously testified at his deposition that Nebel had given him a verbal warning over the telephone. Dkt. 34, at 44–45. Under the "sham affidavit" rule, he cannot change the version of events he set forth in his deposition with a new affidavit painting his actions in a better light.[4]

In August 2013, Broom received a written performance warning that stated, in pertinent part: "[w]e cannot continue to go down this path. It is time to start paying more attention and

---

[3] Parts that need to be "reworked" are parts that are defective but that can be fixed, and "scrap" parts cannot be fixed and must be discarded.

[4] *See, e.g., McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (sham-affidavit rule "is designed to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised").

bringing Gary to a higher level. We cannot continue to make scrap because of lack of attention to detail." Dkt. 32-6.

In November 2013, Broom received another written performance warning indicating that his "lack of attention to [his] job [had cost Aztalan] considerable unnecessary expense in wasted time and materials." Dkt. 32-7. He was given a disciplinary suspension.

In March 2014, Broom received a performance review, this time from Materials Manager Trent Pritchard, stating that his job performance continued to be substandard. He received "needs emphasis/growth" grades for several categories on his performance and skills charts, including "Quality of work," "Problem solving skills," "Detailed orientated [sic]," "Motivated, innovative, offers new ideas and methods," and "Demonstrates leadership abilities." Dkt. 32-8. The reviewer also stated, "Gary's past objectives were to work on quality. This has been an issue that he has worked on and continues to work on. He has shown significant improvement in the last few months." *Id*.

In March 2015, Broom received another written warning that detailed numerous perceived problems with his performance, including continuing deficiencies with the products he was manufacturing, his failure to provide assistance to his coworkers where appropriate, and his failure to fix equipment he was capable of fixing. Aztalan suspended Broom from work for one day.

There was an incident in late June 24, 2015, that directly preceded Broom's termination. The parties dispute much of the event. Aztalan's version is as follows: Pritchard says that Paul Hogan, a first-shift employee, told him that he was upset about a note that Broom had left for him. The note said:

> Your wife does not work here so here is your checklist. (1) Fill
> machine up with coolant. (2) Empty the chip barrel. (3) Start

5

> paperwork at 12:30pm so you are done at 1:30pm. (4) 2:00pm GO HOME!!"

Dkt. 32-9. Another employee, Josh Ludlow, told Pritchard that he had seen Broom writing the note, and that he attempted to convince Broom not to leave it for Hogan.

Pritchard and Sarah Cummings, Aztalan's human resources manager, called Broom into a meeting, in which they told him that the note was unacceptable and that his behavior violated Aztalan's policies. They say that Broom admitted to writing the note and that he did not deny leaving it for Hogan. Pritchard and Cummings then decided to fire Broom for the incident and for the problems with his performance.

Broom disputes much of Aztalan's version. In his summary judgment opposition, he states that he did not write the note for Hogan to read, and that Ludlow could not have seen him write it. It is unclear whether he also means to state flat-out that he did not write the note, but even if that is his position at summary judgment, I cannot credit that statement under the sham-affidavit rule: in his deposition he admitted that he did write the note. *See* Dkt. 34, at 92–93. But he says that he had written the note to himself years earlier as a reminder while he was training, and that the note was kept in his locker, which was unlocked and accessible to anyone.

As for his meeting with Pritchard and Cummings, Broom says that they did not specifically discuss the note or show it to him. He says that Pritchard held up a blank piece of paper and said "this is unacceptable, you're not a team player, and we're terminating you." *Id*. at 95.

At the time Broom was terminated, Aztalan employed eight people in their 60s and 70s, including five older than Broom. Broom concedes that he was never the subject of any age-related comments during his time with Aztalan.

6

B. Analysis

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

The Age Discrimination in Employment Act provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). In other words, Broom must prove that his age was the "but-for" cause of his termination. *See id.* at 177–78.

Courts analyze ADEA claims using the same framework used to analyze employment discrimination claims under Title VII of the Civil Rights Act. Aztalan approaches the termination claim by applying the "direct" and "indirect" methods of proof long used by courts to assess discrimination claims. The Court of Appeals for the Seventh Circuit has recently warned courts against sifting evidence into two separate categories for analysis under these two

methods. Under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." The same holds true for Broom's ADEA claim. Therefore, I will consider Broom's evidence as a whole and not distinguish between direct and indirect evidence or methods of proof.

In determining whether the evidence would permit a reasonable factfinder to conclude that Aztalan discriminated against Broom because of his age, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), remains relevant as a "means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *See, e.g.*, *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). To prove that Aztalan discriminated against Broom, Broom must make an initial (or "*prima facie*") case with evidence that: (1) he is a member of a protected class; (2) he met Aztalan's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. I do not take the parties to be disputing the first and third prongs of this test: Broom was over 40 when his employment at Aztalan was terminated.

Satisfying all four prongs of the *prima facie* case shifts the burden to the defendant "to produce a legitimate, noninvidious reason for its actions." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). If the defendant rebuts the *prima facie* case, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual. *Id*.

8

Aztalan contends that Broom's claim fails because he was not meeting his job expectations and he cannot show that similarly situated younger employees were treated better than him. The facts in the summary judgment record support this argument: Aztalan produces evidence showing that Broom was repeatedly warned by supervisors that his work needed improvement and that he acted unprofessionally. He received negative performance reviews, verbal and written warnings, and he was suspended twice, including a one-day suspension three months before he was fired.

And then there was the incident regarding the note Aztalan says Broom left to belittle a fellow employee. Broom was fired later that day. Broom disputes details about these events, but those disputes are not material. Broom maintains that he did not intend to leave the note for Hogan, and in his deposition, he theorized that the note was stolen out of his locker, but his mere speculation is not enough to create a material dispute. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (speculation or conjecture not sufficient to raise disputed issue of material fact). It is undisputed that Pritchard and Cummings thought that Broom left the note for the purpose of belittling Hogan, which would provide an obvious reason for an employer to discipline an employee.

Broom fails to present evidence suggesting that age was the true reason for his termination. Broom's ADEA claim raises the issues of Aztalan's legitimate job expectations and Broom's treatment compared to similarly situated younger employees, which are closely tied to the question whether Aztalan's proffered reasons for its decision was a pretext to cover its true discriminatory purpose. "[T]o show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (quoting

9

*Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008)). Because these issues are so closely related, I will consider them together. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) ("[T]he question of whether he was meeting Sybase's legitimate expectations merges with the question of whether Sybase's reasons for firing Senske are pretextual.").

Broom fails to show that older employees in general or he in particular were treated worse than similarly situated younger employees. He admits that he was never the subject of any age-related comments from supervisors before his termination or at the meeting where he was fired. In his deposition, he briefly discussed three other 62-year old men who he says were terminated around the same time as him, *see* Dkt. 34, at 110–13, but he does not present any evidence explaining the circumstances around their terminations, or providing any information about how younger employees were treated. Aztalan stresses that it employed and continues to employ several people older than Broom, and others close to his age. No reasonable jury could infer from the relatively scant evidence in this record that Aztalan sought to discriminate against older employees.

Ultimately, it is unclear whether Broom really intends to rely on an age-discrimination theory. Both in his deposition and at summary judgment, he responded to references to his ADEA claim by saying that he is pursuing a "wrongful termination" claim, suggesting that his theory has evolved away from age discrimination. But this phrase is too vague to explain a different theory of relief, and Broom has not amended his complaint or provided facts at summary judgment that would support any other federal or state-law theory. The only real theory evident from his summary judgment materials is that he believes that he was unfairly treated by Pritchard:

> All my previous performance reviews meets all requirements. But
> when it comes to this one [Dkt 32-8], nothing changed except my

> supervisor who now is Trent Pritchard in his opinion needs growth. I have been doing the same job for over six years and received pay increases in the past and now he thinks I am going backwards.

Dkt. 35, at 1–2. He also submits a portion of an administrative law judge's opinion in an unemployment-benefits case stating that Broom was not fired for "substantial fault connected with [his] work." Dkt. 35-5.

Broom is incorrect when he suggests that he did not receive negative reviews before Pritchard arrived, but even if that were the case, Pritchard is free to have different standards than other supervisors, even if that means he incorrectly rated Broom. Federal courts "do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003). Even if Broom's account of events and other evidence like the ALJ's decision suggest that Pritchard did not like Broom, or that Pritchard and Cummings fired Broom without explaining to him why they were doing it, Broom's evidence is not enough to maintain an ADEA claim. It is not Aztalan's burden to show that events transpired exactly as it says they did, or that Broom's supervisors treated him assiduously fairly; it is Broom's burden to show that he was discriminated against because of his age. Because Broom fails to present evidence in his favor sufficient to survive summary judgment on an age-discrimination claim, I will grant Aztalan's motion for summary judgment and dismiss this case.

ORDER

IT IS ORDERED that:

1. Defendant Aztalan Engineering, Inc. is awarded its reasonable attorney fees and expenses in the amount of $1,427.50.

2. Defendant's motion for discovery sanctions, Dkt. 37, is GRANTED in part. Defendant may have until May 23, 2018, to submit an itemized accounting of its reasonable expenses. Plaintiff may have until June 6, 2018, to file any objections.

3. Defendant's motion for summary judgment, Dkt. 28, is GRANTED.

4. Defendant's motion to stay case deadlines, Dkt. 41, is DENIED as moot.

5. The clerk of court is directed to enter judgment for defendant and close this case.

Entered May 15, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge